**William T. RICKS, Plaintiff,**

v.

**XEROX CORPORATION, a New York Corporation, Defendant.**

No. 93–2545–JWL.

United States District Court, D. Kansas.

Feb. 14, 1995.

Kenneth P. Seck, Overland Park, KS, Leon B. Seck, Kansas City, MO, for plaintiff.

Shelly L. Freeman, William H. Sanders, Sr., John R. Phillips, Peter T. Niosi, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff, William T. Ricks, has sued his employer, Xerox Corporation ("Xerox"), for employment discrimination on the basis of an alleged disability and also on the basis of his age, in violation of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Xerox has moved for summary judgment on both claims (Doc. # 25). For the reasons set forth fully below, defendant's motion is granted and plaintiff's claims are dismissed with prejudice.

### I. Facts

■ The following facts are uncontroverted for purposes of this motion.[1] Plaintiff was employed by Xerox from August 13, 1973 to April 28, 1993. Until April 24, 1989, plaintiff worked as a Customer Service Engineer in charge of installing, maintaining and repairing Xerox photocopiers. On that date he was involved in an automobile accident which resulted in injuries to his back and knee. He was diagnosed at the time with bulging intervertebral disks, L–4–5, L5–S1, acute lumbar strain and degenerative disk disease, and with a herniated intervertebral disk.

Plaintiff did not return to work after the accident, but instead received short-term disability benefits in accordance with Xerox personnel policies. He received such benefits for five months and then was placed on Xerox' long-term disability plan. According to Xerox policy in force from 1989 to 1993, a disability for which an employee may receive long-term benefits is defined as:

> the inability of an employee to be employed in any substantial and gainful work either inside or outside of Xerox because of personal impairment caused by injury or illness, occupational or non-occupational, provided that such inability is certified in writing by a licensed physician or a recognized medical practitioner acceptable to Disability Services.

In March of 1990, Xerox Disability Services received a letter from Dr. Stephen L. Reintjes stating that he had examined Mr. Ricks with respect to his back injuries and that it was his opinion that Mr. Ricks could return to work without restrictions. In May of 1990, Dr. John Pazell examined plaintiff with respect to the injury to his right knee

---

1. Xerox moves that plaintiff's first affidavit be struck on the grounds that it does not comply with Rule 56(e) standards or with D.Kan. Rule 206(c). The affidavit simply communicates that Mr. Ricks "has read the foregoing Suggestions in Opposition to Motion For Summary Judgment and the responses and allegations are true and correct to the best of his knowledge and belief." An almost identical affidavit was examined in *Malek v. Martin Marietta Corp.*, 859 F.Supp. 458 (D.Kan.1994). The court struck the affidavit on the following grounds:

   > The plaintiff's attempt at sweepingly adopting all facts found in his brief contradicts the plain requirements of Rule 56(e) and D. Kan. Rule 206(c). First, the affidavit does not show the plaintiff to be competent to testify to many of the matters found in his memorandum. Second, the plaintiff avers that the statement of facts "are true and correct to the best of my

   knowledge and belief." It is the plaintiff's personal knowledge, and not his beliefs, opinions, rumors or speculation, that are admissible at trial and the proper subject of any affidavit. Third, because of these deficiencies in the affidavit, the court cannot determine which facts it can accept as based on personal knowledge and which must be rejected as being conjecture or belief. For all of these reasons, the court is compelled to enforce Rule 56(e) and disregard the plaintiff's affidavit.

   *Id.* at 460–61 (citations omitted). For all of the same reasons, the court shall disregard Mr. Ricks' first affidavit.

   Mr. Ricks' second affidavit is more troublesome. The court will not strike it, but rather considers it to the extent that the court can verify the items controverted are within the personal knowledge of Mr. Ricks.

and released him to work with no restrictions concerning that knee.

Xerox Disability Services determined that plaintiff had been cleared for work and attempted to reinstate him to his regular employment in May of 1990. In response, plaintiff wrote Xerox and stated that while he would report to work as directed, he felt he was "not fully recovered from [his] injuries and therefore not completely healthy." Def.'s Mot.Summ.J.Ex. 8.

Plaintiff was not reinstated, but instead returned to Dr. Reintjes on May 21, 1990 complaining that he could not go back to work due to his back and knee pain. Dr. Reintjes recommended that plaintiff enter a "work hardening program" at Baptist Medical Center and undergo evaluation there. He also stated that plaintiff should make an appointment to see him after the therapy and that "hopefully at that time" he could release him for work. *Id.,* Ex. 10. Plaintiff never attended the program, allegedly because it was not covered by his insurance.

Plaintiff was referred to another doctor, Thomas Cuevas, with whom he visited on June 27, 1990. Dr. Cuevas recommended rehabilitation at the University of Kansas Medical Center. A case manager of the spine rehabilitation program at the center reported, among other things, the following to Dr. Cuevas:

Behavioral: As a result of his pain, Mr. Ricks has experienced an inability to work as well as decreased general functional ability. Activities of daily living, include performing self-care tasks, meal preparation and visiting with friends/family. He relates that he's able to function at a slow steady pace all day if he avoids pushing/pulling and lifting. He has only needed to stay in bed 2 times because of pain since the onset of his pain. Patient denies having trouble falling asleep or waking up throughout the night ... Patient relates that if he was without pain, in addition to working, he would like to be involved with housework chores, yardwork, playing table tennis and bowling. He believes that if he engages in these activities the likelihood for permanent damage increases.

The same therapist noted after seeing plaintiff that "[his] attendance [at therapy] has been sporadic and his attitude has been somewhat disinterested to date ... If we do not see any changes we'll document and discharge." [2] *Id.,* Ex. 13.

On December 4, 1990, Dr. Cuevas again saw plaintiff and reported that, although he could not comment on the degree of total disability of Mr. Ricks, plaintiff had a limited range of motion in the lumbar spine and should avoid repeated bending or stooping and lifting over twenty pounds. He further noted that "patient was not placed off work by this examiner." Ten days later Dr. Cuevas recommended outpatient physical therapy, but noted that plaintiff declined any further therapy because it had not helped in the past.

In February of 1991, Xerox again attempted to remove plaintiff from long-term disability and place him on some sort of active status. Based on information received from physicians who examined plaintiff, Xerox attempted to find plaintiff a position subject to the following restrictions: no repetitive bending or stooping and no lifting above twenty pounds. [3] Xerox created an Administrative

---

**2.** Xerox has produced evidence of the therapist's notation by attaching a copy of it. Plaintiff asserts that the notation of this therapist is "controverted." Plaintiff does not object to the note for lack of foundation or authenticity or based on any other rule of evidence. Instead plaintiff simply states, with no citation to the record or any support in the record, that plaintiff did continue to work with the occupational and physical therapist but that she recommended work hardening and his insurance would not pay for such treatment.

**3.** Defendant's statement to this effect is supported by a citation to the record and specifically by medical records and the affidavit of JaAnn Couto, the Human Resources Operations Manager involved in plaintiff's case. Plaintiff, however, asserts that this evidence is "controverted." Again plaintiff fails in his response to comply with D.Kan. Rule 260 by citing to the record. Thus, the court deems defendant's statement of fact 27 admitted to the extent reflected in the body of this opinion. Plaintiff also attempts to controvert the affidavit of Ms. Couto by his own affidavit. Plaintiff's affidavit states, however, only that this statement is "controverted" and again states no facts from which the court could conclude the same. *See* Pl.Aff. ¶ 16. Nor has the court, after reading the entire record, found any

Aide position for plaintiff which it believed would be consistent with the restrictions placed upon him.[4] Although the position was less demanding than plaintiff's previous one, plaintiff nevertheless was to be paid the same annual salary that he would have received if he were continuing in his previous position.

On March 7, 1991, after Xerox informed plaintiff that he was expected to return to work, plaintiff sought additional treatment from Dr. Cuevas. He left a message with Dr. Cuevas' office that he had been released to return to work, but that he was not able to do so. In response, Dr. Cuevas wrote that "Patient was allowed to return to work with restriction. This will not be changed unless a new problem were to develop."

On March 18, 1991, plaintiff accepted the Administrative Aide position and returned to work. This lasted, however, only a few days and plaintiff was eventually placed back on long-term disability. After this failed attempt, plaintiff never again performed work for Xerox.

On April 24, 1991, Dr. Chris J. Maeda reported that plaintiff had a severely degenerated disc at L4–L5 with a vacuum phenomenon and severely bulging annalist which could be considered borderline herniated. Although he recommended that plaintiff consider returning to work, plaintiff was reluctant to do so. He then referred plaintiff to the Menorah Pain Clinic. In January of 1992, Dr. Maeda again diagnosed an injured and degenerated disc at L4–L5. He recommended that plaintiff avoid repetitive bending, stooping, lifting and carrying, and stated that plaintiff could return to work at any time so long as those restrictions were met. Plaintiff did not return to work.

On May 29, 1992, Travelers Insurance Company ("Travelers")[5] requested that plaintiff provide updated information to support the continuation of disability benefits.

Hearing no response from plaintiff, Travelers sent a certified letter on July 30, 1992, informing plaintiff that if he failed to return completed forms verifying his eligibility for continued benefits within fifteen days, Travelers would assume that he was no longer disabled and his benefits would terminate. Plaintiff did not respond. Travelers informed Mr. Ricks by certified letter of September 15, 1992 that due to the lack of response, his file had been closed and his benefits terminated.

Soon thereafter, plaintiff again saw doctors who referred him to physical therapy. He missed four of seven scheduled therapy sessions. Dr. Frank H. Ise, an orthopedist, examined plaintiff and noted that plaintiff could not lift more than twenty pounds, could not operate trucks or heavy machinery, could not walk on uneven ground and could not push, pull, kneel, crouch, stoop, bend, or reach above shoulder level.

Based on that information, Travelers determined that plaintiff could return to work and that his benefits would again cease. Xerox Human Resource Operations Manager JaAnn Couto initiated a second job search to determine whether there was an available full-time job within plaintiff's operating group which he was capable of performing and for which he was qualified. Ultimately, no job was found.

On January 27, 1993, plaintiff appealed the termination of his long-term disability benefits. As a result of the appeal, the job search for plaintiff was placed on hold. The termination of benefits was eventually upheld by Travelers on April 2, 1993. By that time, plaintiff had received $50,000 in long-term disability benefits under the Xerox plan.

Dr. Ise testified by deposition that as of March 16, 1993, plaintiff had full range of motion of the lumbosacral spine without in-

evidence controverting that of the defendant on this point. Thus, the court accepts as undisputed that Xerox attempted to find plaintiff a position subject to the restrictions imposed.

**4.** Once again evidence that this was in fact defendant's belief has been produced by the defendant and plaintiff's response is that the evidence is "controverted." *See* Pl.Resp. ¶ 29; Pl.Aff. ¶ 18.

Absent evidence anywhere in the record controverting defendant's evidence on this point, it is deemed admitted.

**5.** At some point Travelers started paying plaintiff's benefits instead of Xerox directly. The change is of no consequence for purposes of this motion.

creased pain and that there was no indication that plaintiff was substantially limited in his ability to learn, talk, hear, speak, breathe, perform manual tasks, or in his ability to care for himself. He also noted that plaintiff was able to climb on and off the examining table without apparent pain and to move about the room without demonstrable difficulty. Finally, he noted that plaintiff was able to work full-time, but only with certain restrictions.[6] The restrictions were as follows: no lifting over ten pounds, no driving for more than one hour, no walking on uneven ground, no operating a truck, forklift or other equipment, and no pushing, pulling, kneeling, crouching, stooping, bending, or reaching over shoulder level.

Plaintiff was terminated effective April 28, 1993 and paid six months severance pay. A letter from plaintiff's attorney, which was dated the same day and hand-delivered to Xerox, stated the following:

> We represent William Ricks, an Employee of Xerox, in his recovery of damages including Exemplary and Punitive Damages which he sustained as a result of your termination of Compensation and Benefits during his Disability . . . [D]emand is hereby made for settlement.

> In our investigation, we have determined that Mr. Ricks injured his back while operating a Company Vehicle within the course and scope of his employment with Xerox. Thereafter, Xerox paid certain Disability Benefits and then, Travelers began paying certain Benefits. Although the Disability Benefits were terminated, Xerox failed to pay any benefits or salary to Mr. Ricks; all while he continued to be an Employee of Xerox. As a result of such actions and conduct of Xerox and Travelers, Mr. Ricks has lost his personal vehicle through Repossession; his Residence in Kansas City, Wyandotte County, Kansas has been threatened with foreclosure and he now suffers from Depression and Anxiety. . . .

On September 14, 1993, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting that he had been discriminated against on the basis of a disability. Later, on February 22, 1994, he filed a charge of discrimination alleging illegal intentional discrimination on the basis of his age.

## II. Discussion

In the pretrial order in this case, plaintiff contends that he was discriminated against on the basis of his disability in violation of the ADA and on the basis of his age in violation of the ADEA. He alleges that he sustained injuries in the automobile accident in April of 1989 that affected his "life functions including performing some of his regular job functions." He asserts that the defendant violated the ADA by failing to provide reasonable accommodations for plaintiff including rehabilitative employment, an "inside job" commensurate with his impairment, a managerial or administrative position and/or an assistant or helper. He also alleges that the defendant violated the ADA by terminating plaintiff on account of his impairment and disability. And, finally, plaintiff seeks damages for his termination which he contends was improperly motivated by his age.

Xerox denies that plaintiff was discriminated against on the basis of an alleged disability or on the basis of his age and contends that plaintiff was terminated solely because there was no vacant position consistent with plaintiff's physical restrictions for which he was qualified and which he would accept. It has moved for summary judgment, arguing that plaintiff has failed to make a prima facie case of either disability or age discrimination and, additionally, that plaintiff has not proffered any evidence to indicate that its articulated reason for plaintiff's dismissal was a pretext for unlawful intentional discrimination.

---

6. Plaintiff's response to defendant's representation as to Dr. Ise's testimony is again simply the word "controverted." Whether plaintiff controverts that this was in fact Dr. Ise's testimony or only the substance of the testimony is unclear. From a reading of Dr. Ise's deposition, it is clear that he testified that plaintiff could return to work with restrictions. To the extent that plaintiff tries to claim that he testified otherwise, his claim is rejected. Moreover, plaintiff has presented no medical evidence of his own to contradict Dr. Ise.

## A. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langley v. Adams County, Colorado*, 987 F.2d 1473, 1476 (10th Cir.1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States*, 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.*, 740 F.Supp. 1519, 1522-23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## B. ADA Claim

In order to state a prima facie case of disability discrimination under the ADA, plaintiff must establish: (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe) he is able to perform the essential functions of the job; and (3) that

the employer terminated him because of his disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir.1995). Defendant contends that plaintiff has not produced sufficient evidence to show that he is a disabled person within the meaning of the ADA and, thus, has failed to show his claim merits a trial. This court agrees.

The ADA defines the term "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Mr. Ricks does not attempt to distinguish between these alternatives, or to show in which category he falls, but instead declares in a conclusory fashion that he is disabled. Consequently, the court will address each ground separately.

There is ample evidence in the record indicating that plaintiff injured his right knee and back in an automobile accident. The court will assume for purposes of this motion that plaintiff continued to be affected by these injuries to some extent until the time of his termination. The court will also assume, without deciding, that plaintiff's degenerative disc condition is a sufficient physical impairment to trigger relief under the ADA. Plaintiff has given the court no assistance, however, in determining whether these injuries and their effects substantially limited any of his major life activities. Despite plaintiff's failure to articulate any theory with respect to whether a major life activity has been substantially impaired, the court has examined and considered the entire record in an effort to uncover evidence which might broadly be seen as helpful to his claim.[7]

The ADA does not define the term "major life activities," but the Tenth Circuit has found that the EEOC regulations issued to implement it, 29 C.F.R. Pt. 1630, are instructive. *See Bolton v. Scrivner*, 36 F.3d 939, 942 (10th Cir.1994). "The term 'means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing,

---

7. The court has undertaken this review in order to attempt to ensure that Mr. Ricks is not deprived of his day in court simply because his counsel has not marshaled the evidence in the manner contemplated by summary judgment practice and applicable rules. His counsel's shortcomings, although not held against the plaintiff, are not excused thereby.

speaking, breathing, learning and working.'" *Id.* (citing 29 C.F.R. § 1630.2(i)). The *Bolton* court concluded that three factors should be considered when determining whether an impairment substantially limits a major life activity of an individual: the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *Id.* at 943.

This court has found no evidence in the record that at the time of plaintiff's termination the injuries to his back and knee negatively affected his ability to perform manual tasks, see, hear, speak, breathe or to learn. The only evidence, the testimony of Dr. Ise, is precisely to the contrary. Thus, there is no basis upon which to find that any of these major life activities were in any way affected by defendant's physical impairment.

With respect to the major life activity of walking, there is evidence that plaintiff complained to Dr. Ise that he had to use crutches "on occasion" and that his left leg caused him pain. There is no evidence, however, from which the court can evaluate the nature and severity of this pain, its duration, or its permanent or long-term impact. There is simply no basis in the record for a finding that plaintiff's ability to walk was substantially affected by his back and knee injuries. Similarly, while one could infer from the evidence that it became more difficult for plaintiff to take care of himself, no reasonable jury could conclude on this record that plaintiff's ability to care for himself was substantially affected.[8]

Based on the foregoing, it appears that the theory of plaintiff's case is most likely that he is substantially limited in the major life activity of working. To demonstrate that an impairment substantially limits the major life activity of working, an individual must show "significant restriction in the ability to perform either a class of jobs or a broad range

of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The inability to perform a single, particular job is insufficient. *Id.; Bolton,* 36 F.3d at 942; *see also Welsh v. City of Tulsa,* 977 F.2d 1415, 1417, 1419 (10th Cir.1992) (While major life activity includes working, it does not necessarily mean working at the job of one's choice. An impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Rehabilitation Act).

In addition to the three factors already discussed (nature and severity, duration, long-term impact), the Tenth Circuit has indicated that three other factors may be considered when determining whether a plaintiff has shown a substantial limitation in the major life activity of working:

(A) the geographical area to which the individual has reasonable access;

(B) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Bolton,* 36 F.3d at 943; 29 C.F.R. § 1630.2(j)(3)(ii).

This circuit considered the above factors in the context of facts similar to those of this case in *Bolton v. Scrivner,* 36 F.3d 939 (10th

---

**8.** Plaintiff points to the note of an occupational therapist which states that "as a result of his pain, Mr. Ricks has experienced an inability to work as well as a decreased general functional ability" as evidence that a major life activity was substantially limited by his disability. This note, however, is dated July 30, 1990 and is not partic-

ularly probative of his "general functional ability" at the time of his termination in April of 1993. The court finds that this note, standing alone, does not create a genuine issue of material fact with respect to whether plaintiff's physical condition substantially limited a major life activity.

Cir.1994). That plaintiff's claimed impairment included pain and numbness in his feet and a limited ability to lift weight. *Id.* at 943. He presented evidence that he had a nine percent permanent partial disability to his right foot and a twenty-nine percent permanent partial disability to his left foot. *Id.* He also presented evidence that various doctors declared that he was unfit to return to work, that he could not stand or walk for prolonged periods of time, or lift objects overhead. *Id.* In analyzing his claim, the Tenth Circuit found that this evidence addressed the nature and severity, duration and impact of plaintiff's impairment, but that it did not address whether plaintiff was significantly restricted in his ability to perform a *class of jobs. Id.* at 944. Absent such evidence, summary judgment was proper. *Id.*

Like the plaintiff in *Bolton,* Mr. Ricks has not shown that he is significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person. There is no evidence to demonstrate his level of training, skills and abilities in order to compare them to the average person. The evidence does not address the geographical area to which plaintiff has access or the number and type of jobs demanding similar training from which plaintiff would also be disqualified. Plaintiff has not met his burden to set forth specific facts showing that he is substantially impaired in the major life activity of working. Having addressed all potential major life activities that could have been shown to be substantially limited, the court turns to whether plaintiff has produced evidence concerning either a record of an impairment that substantially limits major life activities or that he was regarded as having such an impairment.

■ Plaintiff has not met his burden to show that he has ever had what the act contemplates as a "record" of an impairment that substantially limits a major life activity. The evidence shows only that there were medical and employment "records" indicating that plaintiff *could* perform all major life activities, including working, within the meaning of the ADA albeit he had experienced an accident which the court has treated as leading to an impairment within the meaning of the statute. Similarly, Mr. Ricks has not shown that Xerox regarded him as having such an impairment. The only evidence presented indicates that Xerox believed Mr. Ricks was capable of performing some work and that it attempted to find a position for which he was capable and qualified. In sum, the court must conclude that plaintiff has not made a prima facie showing that he is a disabled person within the meaning of the ADA under any theory. Accordingly, summary judgment is granted in favor of Xerox on plaintiff's ADA claim.

In addition, the court finds that summary judgment is also proper on the separate ground that there has been no showing that plaintiff is a "qualified individual," the second element of a prima facie case. He has not shown that with or without an accommodation he could have performed the essential functions of a position with Xerox.

■ Plaintiff bears the initial burden to make a facial showing that accommodation is possible. *White,* 45 F.3d at 361–62 (citing *Mason v. Frank,* 32 F.3d 315, 318 (8th Cir. 1994); *Barth v. Gelb,* 2 F.3d 1180, 1187 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994); *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir. 1991)). The burden of production then shifts to the employer to present evidence of its inability to accommodate. *Id.* "If the employer presents such evidence, the plaintiff may not simply rest on his pleadings. He 'has the burden of coming forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence.'" *Id.* (citing *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir. Unit A 1981)).

■ Plaintiff does not dispute that he could not perform the essential functions of his previous position, that of a Customer Service Engineer. He contends instead that Xerox should have accommodated him by finding another job which he could have performed within his restrictions. In response, Xerox has produced evidence that it searched for a job for plaintiff but that none were

available which would have been consistent with the restrictions placed on plaintiff or which plaintiff would accept. Plaintiff has not proffered any evidence that other positions were available which he could perform. He has not come forward with any evidence concerning his own capabilities which would suggest that he could perform any position at Xerox, let alone one that was available. *See White*, 45 F.3d at 361–63 (plaintiff's subjective opinion alone was insufficient evidence that he could perform various other jobs where employer produced evidence that the jobs did not meet his restrictions or that there were no vacancies).[9]

 Plaintiff also contends that a promotion or advancement to a managerial or administrative position would have accommodated his disability and rendered him a qualified individual within the meaning of the ADA. Plaintiff's argument overlooks the fact that an employer is not required to offer a promotion to an individual with a disability as a reasonable accommodation. *White*, 45 F.3d at 362–63; 29 C.F.R. pt. 1630, App. § 1630.2(*o*). Mr. Ricks' request for a promotion is unreasonable as a matter of law. As to plaintiff's final contention,[10] the court does not believe that requiring Xerox to hire a "helper" to assist him in performing the essential functions of any position would, as a matter of law, be a reasonable accommodation. In light of the fact that the ADA does not require an employer to promote a dis-

abled employee, reassign the employee to an occupied position or to create a new position to accommodate the disabled worker, demanding that Xerox specifically hire a full-time helper to assist plaintiff would be unreasonable. *Id.* Because plaintiff has not shown that accommodation was possible, he has not shown that he was a "qualified individual" under the ADA, and summary judgment is granted on this ground as well.[11]

### C. ADEA Claim

 To establish a prima facie case of age discrimination, plaintiff must show: (1) that he was within the protected age group; (2) that he was doing satisfactory work; (3) that he was discharged despite the adequacy of his work; and (4) that he was replaced by a younger employee. *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir.1986). Once plaintiff has established these elements, the burden then shifts to the employer to articulate a facially nondiscriminatory reason for its employment decision. *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 n. 4 (10th Cir.1992). The burden then shifts back to the plaintiff to present probative evidence which could support the inference that defendant's reason was merely a pretext for discrimination. *See Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1454–55 (10th Cir.1994).

 Plaintiff has not established a prima facie case of age discrimination. Al-

---

9. The court also notes that plaintiff's current claim that he was "qualified" to perform the essential functions of his position is belied by his previous statements and actions. Until at least January of 1993, plaintiff claimed that he was entitled to long-term disability benefits—that he was unable to "be employed in any substantial and gainful work either inside or outside of Xerox." After leaving the administrative aide position, plaintiff apparently never communicated to Xerox his desire to work with accommodations until he filed this lawsuit. Absent evidence that plaintiff misrepresented his condition in his pursuit of long-term disability benefits, he is arguably estopped from now claiming he was in fact a qualified individual. *Cf. Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 555–57 (D.Kan. 1995) (Plaintiff, her counsel, and her physician consistently represented that she was entitled to long-term disability benefits because she could not perform the material duties of her job. Having collected benefits, based on the unambiguous, informed representations, plaintiff was held

estopped from claiming in her lawsuit that she could perform the essential functions of her position.).

10. In fact, he has raised yet another alternative. However, plaintiff has not explained or articulated what he means by "rehabilitative employment" as a reasonable accommodation, nor has Xerox been able to decipher the meaning of this term in order to produce a response. Plaintiff has not met his burden on summary judgment as to this theory of relief and, thus, it is also rejected.

11. Because the court has already found two alternative but related legal bases upon which the defendant is entitled to summary judgment, it does not reach the more complicated issue of whether plaintiff has shown evidence from which a jury could conclude that Xerox terminated Mr. Ricks on account of his alleged disability at all.

**1478**

though he is within the protected category, there is no evidence that he was doing satisfactory work at the time of his termination or that he was replaced by a younger employee. Even if the court were to assume that plaintiff could satisfy his initial burden, moreover, his claim in any event would fail. Xerox has produced evidence that it terminated plaintiff for the legitimate non-discriminatory reason that it could not find a position consistent with Mr. Ricks' physical restrictions. Plaintiff, on the other hand, has come forward with no evidence from which a reasonable jury could conclude that this reason was pretextual and that plaintiff's termination was actually motivated by unlawful age discrimination. Thus, summary judgment is granted in favor of the defendant on this claim as well.

### III. Conclusion

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. # 25) is granted.

**IT IS SO ORDERED.**