Kevin OSWALT, Plaintiff,

v.

SARA LEE CORPORATION d/b/a
Bryan Foods, Inc., Defendant.

No. 1:94CV91–B–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

June 20, 1995.

Jim D. Waide, III, Waide Law Office, Tupelo, MS, for plaintiff.

James C. Helveston, Edwards, Storey, Marshall & Helveston, West Point, MS, R. Carl Cannon, Constangy, Brooks & Smith, Atlanta, GA, for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court upon the defendant's motion for summary judgment. The court has duly considered the parties' memoranda and exhibits and is ready to rule.

### INTRODUCTION

The plaintiff, an employee of Bryan Foods in West Point, Mississippi, brought this action against the defendant alleging claims of wrongful discharge in violation of his rights under the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA). The plaintiff seeks actual and punitive damages.

### FACTS

The plaintiff was hired by Bryan Foods in 1982 and was promoted to the position of assistant supervisor in 1992. All indications were that he was a model employee until 1993.

In his spare time, the plaintiff enjoyed painting and fixing automobiles, which he and his friends would do after work in the plaintiff's backyard. In the spring of 1993, the plaintiff rented a shop so as to have a convenient location to perform the auto body work. There is some dispute as to whether he was attempting to turn his auto work into a side business; however, resolution of that issue is immaterial to the outcome of this case.

In July of 1993, the plaintiff was diagnosed as having high blood pressure. His treating physician, Dr. Edmund Miller, stated that he authorized the plaintiff to remain out of work for nearly the entire month of July while his body adjusted to his blood pressure medication. During this time, the plaintiff failed to report directly to his supervisor regarding his condition. The plaintiff would call in to work and leave word about his progress with whoever answered the telephone, but never talked directly with any of his supervisors. Also during this period, many of the plaintiff's co-workers reported to Bryan Foods' management that they had seen the plaintiff at his shop and around town. After one of the supervisors reported seeing the plaintiff's car parked at his shop during the lunch hour, two members of management drove to the plaintiff's shop whereupon they found the plaintiff standing in the hot sun, appearing to supervise work on automobiles.

When the plaintiff returned to work on July 27th, he was placed on 90 days probation for failing to properly communicate with his supervisor as to his medical condition, and for working at his shop when he was supposedly unable to work at Bryan Foods.

On August 4th, approximately one week after returning to work, the plaintiff called in sick due to food poisoning. He went to the doctor, who gave him a work excuse for one day. The plaintiff called his supervisor at work to explain the situation, and notified his supervisor that he would be in to work on August 5th. On August 5th, the plaintiff did not report to work, and did not directly notify his supervisor of his continued need to remain at home. However, the plaintiff did call and leave a message on his supervisor's home answering machine, stating that he was still sick and would be going back to the doctor on August 6th. The plaintiff did not go to the doctor on August 6th, nor did he call or come in to work. On Sunday, August 8th, the plaintiff called his supervisor at home to notify his supervisor that he was still weak and that he would be returning to the doctor on August 10th. The plaintiff did not report to work on either August 9th or 10th. The plaintiff did go to the doctor's office on August 10th, but only in an attempt to obtain a work excuse for the entire length of his absence. When the doctor refused to give him an additional work excuse without a re-examination, the plaintiff left.

The plaintiff returned to work on August 11th, after an absence of five working days, with a medical excuse for only one day. The defendant fired the plaintiff, effective August 12, 1993. The stated reason for the plaintiff's discharge was his failure to provide a doctor's excuse for the days he missed and his false statements about his medical treatment.

## LAW

▪ On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the nonmovant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. That burden is not discharged by "mere allegations or denials." Rule 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

### A. ADA Claim

The ADA provides in pertinent part that: "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the ... discharge of employees...."

42 U.S.C. § 12112(a). The term "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities ...;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

The plaintiff claims that he meets the definition of disability in that he has a record of impairment that substantially limited a major life activity. According to the plaintiff, the fact that Dr. Miller authorized him to remain out of work, a major life activity, provides him with such a record of impairment. The plaintiff further claims that the ADA does not require an intent to discriminate, but rather that the term "discriminate" includes "utilizing standards, criteria, or methods of administration ... that have the effect of discrimination on the basis of disability...." 42 U.S.C. § 12112(b)(3).

▪ The Equal Employment Opportunity Commission, charged with the enforcement of Title I of the ADA, has enacted regulations to implement the equal employment provisions of the ADA.[1] Said regulations, found in 29 C.F.R. § 1630, set forth three factors that should be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2)[2].

▪ In applying the aforementioned factors to the plaintiff's condition, the court

---

**1.** In interpreting the meaning of a statute, substantial deference should be granted to the interpretation given its provisions by the agency charged with administering that statute. The agency's interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jeffer-*

*son Univ. v. Shalala*, 512 U.S. ——, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).

**2.** There are three other factors that may be considered, none of which are relevant to this action. *See* 29 C.F.R. § 1630.2(j)(3)(ii).

finds that the plaintiff does not have a record of an impairment that substantially limits a major life activity. The nature and severity of the impairment is questionable. Although Dr. Miller authorized the plaintiff to stay away from work for nearly a month while the plaintiff's body adjusted to the blood pressure medication, an unusual event in itself, there is no objective evidence that the plaintiff was suffering from any ill effects of the medication. The doctor admitted that his recommendation that the plaintiff not report to work was based solely upon the plaintiff's subjective complaints. Most people suffer little or no side effects when beginning medication to control high blood pressure, especially those which would prevent normal indoor work. Even giving the plaintiff the benefit of the doubt regarding his subjective complaints, it is undisputed that the plaintiff was not house-bound with his ailments. Therefore, the nature and severity of the impairment was minimal. The duration of the impairment is likewise negligible. The condition that caused the plaintiff to miss nearly a month of work was merely temporary. The plaintiff was held out of work not because of any limitation necessitated by his high blood pressure, but rather due to complaints resulting from adjustment to the medication. Now that the plaintiff has adjusted to the medication, the expected long term impact from the plaintiff's high blood pressure is nil. All of the evidence indicates that the plaintiff has suffered no ill effects from either his blood pressure or his medication since returning to work in late July of 1993.

Other courts, in applying the terms of the ADA and similar acts, have held that high blood pressure is not a disability within the meaning of the Act. *See Aucutt v. Six Flags Over Mid–America*, 869 F.Supp. 736, 744 (E.D.Mo.1994) (court found that plaintiff failed to produce any evidence that high blood pressure, unspecified angina, and coronary artery disease substantially limited one or more major life activities); *Greene v. Union Pac. R.R. Co.*, 548 F.Supp. 3, 5 (W.D.Wash.1981) (court found that neither plaintiff's borderline hypertension nor his back condition interfered with plaintiff's normal day-to-day activities so as to meet the definition of a handicap under Washington's handicap discrimination laws). Additionally, the ADA was never intended to extend to persons suffering from temporary conditions and, although hypertension is unfortunately only treatable and not curable, it was not hypertension the plaintiff was using as a reason for his disability, rather, it was the temporary adjustment to the medicine used to treat the hypertension. In *Blanton v. Winston Printing Co.*, 868 F.Supp. 804 (M.D.N.C.1994), the United States District Court for the Middle District of North Carolina, in considering the plain wording of the statute, the interpretive guidelines, and prior court decisions, held that a temporary injury with minimal residual effects cannot be the basis of a viable claim under the ADA. *Id.* at 808. The plaintiff in *Blanton* suffered from a knee injury that prevented him from working for a matter of several days in July, September, and October of 1992. In reaching its decision, the court noted that "as debilitating as [the injury] may have been at times, [the impairment] was of a relatively short duration." *Id.* at 807. Similarly, in *Paegle v. Department of Interior*, 813 F.Supp. 61 (D.D.C.1993), the plaintiff injured his back on two occasions, the second of which necessitated light duty work status for nearly one year. The United States District Court for the District of Columbia held that the plaintiff's back injury, although painful and disabling at the time, was a temporary condition, and therefore did not constitute a handicap for purposes of the Rehabilitation Act.[3] *Id.* at 63–64.

■ The court finds that neither the plaintiff's high blood pressure nor the alleged

---

**3.** The Rehabilitation Act prohibits discrimination on the basis of a "handicap," which was replaced by the term "disability" in the ADA. The definitions of the two terms are identical. By adopting the definition of "disability" from the definition of "handicap" under the Rehabilitation Act, Congress intended that the relevant case law developed under the Rehabilitation Act be generally applicable to the term "disability" as used in the ADA. *Interpretive Guidance on Title I of the Americans with Disabilities Act*, 29 C.F.R. pt. 1630 App. (1994). *See Blanton*, 868 F.Supp. at 807 n. 1.

temporary side effects from the medication qualify as a disability within the meaning of the ADA. The ADA was not meant to cover every ailment or infirmity that renders an employee temporarily unable to perform the duties of his position. Temporary absence from work due to side effects of or adjustment to medication does not give an employee a record of impairment. Millions of Americans are diagnosed with high blood pressure which can be controlled through medication. Some world-class professional athletes have high blood pressure and control it effectively with modern drug therapy and never miss a game. High blood pressure alone, without any evidence that it substantially affects one or more major life activities, is insufficient to bring an employee within the protection of the ADA.

## B. FMLA Claim

The FMLA provides in pertinent part as follows:

> Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
>
> .    .    .    .    .
>
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1). "Serious health condition" is defined as:

> ... an illness, injury, impairment, or physical or mental condition that involves—
>
> (A) inpatient care in a hospital, hospice, or residential medical care facility; or
>
> (B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11). Section 2613 provides that an employer may require that a request for leave under § 2612(a)(1)(C) or (D) be supported by appropriate certification of the employee's condition issued by the health care provider.

■ The FMLA did not go into effect until August 5, 1993. The plaintiff claims that he was discharged after the effective date of the Act, in part for medical leave taken before the effective date of the Act. The plaintiff argues that he was put on probation for matters relating to his July, 1993 high blood pressure treatment, and without such probationary status he would not have been fired on August 12, 1993, after the effective date of the Act. The court finds no merit in the plaintiff's argument. The plaintiff was out of work on medical leave during most of the month of July, but returned on July 27th. Immediately upon his return he was placed on 90 days probation for working at his shop while out on medical leave and for failing to properly communicate with his supervisor as to his medical condition and need to be out of work. The disciplinary actions of the defendant were taken before the effective date of the Act, and therefore, the FMLA does not apply to the plaintiff's July medical infirmity.[4]

■ Even assuming, *arguendo*, that the FMLA applies to the July medical leave, the employee was not denied any benefits due him under the provisions of the Act. The purpose of the Act is to entitle employees to take reasonable leave for medical reasons. 29 U.S.C. § 2601(b)(2). The defendant allowed the plaintiff to take off nearly the entire month of July due to his medical condition and restored the plaintiff to his position upon his return. As will be discussed in more detail later, there is no evidence that the defendant discriminated against the plaintiff for exercising his rights under the Act by placing him on probation upon his return to work.

---

4. In an unpublished opinion, the United States District Court for the Northern District of Illinois recently held that the FMLA cannot be applied retroactively to conduct which occurred before the Act was effective. *Kindlesparker v. Metropolitan Life Ins. Co.*, No. 94–C–7542, 1995 WL 275576 (N.D.Ill. May 8, 1995). This court agrees. While the Illinois Court failed to identify when the activity occurred, it did state that the plaintiff was discharged on August 18, 1993. Its holding regarding conduct that occurred prior to the effective date of the Act, coupled with the fact that the discharge took place after the effective date of the Act, indicates a fact situation similar to ours, at least as to the plaintiff's argument that his discharge was partly related to his July absence.

■ As for the August illness, food poisoning which requires one visit to the doctor cannot possibly be construed as a serious health condition under the terms of the Act. The food poisoning did not require the plaintiff to receive inpatient care at a hospital, hospice, or residential medical care facility, nor did it require continuing medical treatment by a health care provider. Furthermore, the plaintiff did not provide sufficient certification as required by the defendant under § 2613 of the Act. Clearly the circumstances surrounding the August illness are insufficient to afford the plaintiff protection under the Act.

## C. Evidence of Discrimination

■ Assuming, *arguendo*, that the plaintiff is protected by the provisions of the ADA and the FMLA, the plaintiff has produced no evidence that the defendant discriminated against him in violation of the terms of either Act. The courts have established two variations to assert a prima facie case under the ADA. Both variations require that a plaintiff produce evidence tending to show (1) that he or she is a disabled person within the meaning of the Act; and (2) that he or she is a qualified individual within the meaning of the Act (that is, with or without accommodation, he or she is able to perform the essential functions of the job). One group of cases further requires that the plaintiff establish (3) that he or she was subject to an adverse employment decision; and (4) that he or she was replaced by a non-disabled person or was treated less favorably than a non-disabled person. *See Aikens v. Banana Republic, Inc.,* 877 F.Supp. 1031, 1036–37 (S.D.Tex.1995); *Aucutt,* 869 F.Supp. at 743. The other group of cases requires that the plaintiff establish (3) that the employer terminated the plaintiff or subjected him or her to an adverse employment decision "because of" the plaintiff's disability. *See Ricks v. Xerox Corp.,* 877 F.Supp. 1468, 1474 (D.Kan.1995); *Stradley v. Lafourche Communications, Inc.,* 869 F.Supp. 442, 443 (E.D.La.1994). Although there are no set guidelines to establish a prima facie case for wrongful termination under the FMLA, the court finds that a similar showing must be made. The plaintiff must produce evidence that he or she is protected under the FMLA, that he or she suffered an adverse employment decision, and either that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA or that the adverse decision was made because of the plaintiff's request for leave.

■ Under either of the aforementioned guidelines, the plaintiff has failed to establish a prima facie case. The plaintiff has not submitted one scintilla of evidence that any adverse employment decision was based upon an alleged disability under the ADA or upon a request for leave under the FMLA. Nor has the plaintiff produced any evidence that he was replaced by a non-disabled employee, or that he was treated any differently from other employees under similar circumstances. The plaintiff argues that a jury could find that discrimination must have been a motivating factor in his termination since he was such an ideal employee for eleven years. Such "evidence" is clearly insufficient to defeat a motion for summary judgment.

■ Even assuming, *arguendo*, that the plaintiff could establish a prima facie case of discrimination under either Act, the defendant has provided a legitimate, non-discriminatory reason for the plaintiff's discharge. As with any other employment discrimination action, once a plaintiff makes out a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason to explain the plaintiff's termination. If the defendant provides an appropriate reason, the plaintiff must come forward with evidence that the defendant's legitimate reason is merely a pretext for discrimination. *See McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802–06, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668, 677–80 (1973); *Aikens,* 877 F.Supp. at 1036–37; *West v. Russell Corp.,* 868 F.Supp. 313, 316–18 (M.D.Ala.1994). The plaintiff has failed to produce any evidence from which a jury could reasonably believe that the defendant's justification for firing the plaintiff was merely a pretext for

discrimination.[5]

## CONCLUSION

For the foregoing reasons, the court finds that the defendant's motion for summary judgment should be granted as to all claims.

An order will issue accordingly.

Obie D. Washington, Parchman, MS, pro se.

Jo Anne McFarland McLeod, Michael C. Moore, Mississippi Atty. General's Office, Jackson, MS, for Edward M. Hargett.

---

**5.** The plaintiff goes to great length in his brief to prove that he was not working at his shop during the month of July, apparently in an effort to disprove the defendant's legitimate reasons for a portion of its disciplinary action. However, the issue is not whether the defendant was correct in its belief, but rather whether the defendant had a good faith reason for its belief. *Waggoner v. City of Garland,* 987 F.2d 1160, 1165–66 (5th Cir. 1993).