IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 97-30307
Summary Calendar

———————————————

TIMOTHY SCOTT HEFFERN,

Plaintiff-Appellant,

v.

WILLIS-KNIGHTON MEDICAL CENTER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(96-CV-1026)
_____

September 18, 1997

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

    Timothy Heffern brought suit under both the Americans with
Disabilities Act (ADA) and the Family and Medical Leave Act
(FMLA) alleging that defendant Willis-Knighton Medical Center
violated his rights by failing to reinstate him in his former
position upon his completion of a substance abuse treatment
program.  The district court granted Willis-Knighton's motion for

———————————————

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

summary judgment, and Heffern appeals.  We affirm the decision of the district court.


## I.   BACKGROUND

From July 6, 1993 until October 4, 1994, Willis-Knighton Medical Center employed Timothy Heffern, a registered nurse, as the cardiology coordinator for its electrophysiology laboratory. Beginning on October 5, 1994, Heffern took a leave of absence from his job in order to undergo treatment for substance abuse. Heffern was initially treated on an inpatient basis at Willis-Knighton Medical Center, but he was discharged without completing the program because he failed to abide by program rules and regulations.  Heffern was then admitted to and successfully completed CPC Brentwood Hospital's outpatient Addictive Disease Recovery Program.

Upon entering the Brentwood program, Heffern signed a Program Agreement with the Recovering Nurse Program of the Louisiana State Board of Nursing.  Among other things, the Program Agreement required that Heffern submit to continued monitoring and provided that for at least one year following treatment Heffern could not work in high stress areas or unsupervised positions.  As a result of the restrictions contained in the Program Agreement, and on the advice of Barbara McGill, the Director of the Recovering Nurse Program, Heffern was

2

reassigned to the Renal Dialysis Unit when he returned to work in December of 1994. The reassignment was based on the fact that the electrophysiology department was a "critical care" unit and work in the unit was therefore considered highly stressful. As a caveat to her transfer recommendation, however, McGill noted that Heffern could resume work as the cardiology coordinator in the electrophysiology department only if he could be excused from providing direct patient care. Heffern's transfer resulted in a substantial decrease in salary, and he was therefore dissatisfied with the position.

After the one-year period had elapsed, in February of 1996, Heffern requested a transfer back to the electrophysiology unit. His request was denied pursuant to a company policy prohibiting the transfer of any employee who had received a corrective action notice within six months prior to the time of the transfer request. At the time of his request for a transfer, Heffern had received eight corrective action notices in the preceding six months. Heffern subsequently filed this lawsuit alleging that his assignment to the Renal Dialysis Unit and Willis-Knighton's later refusal to transfer him back to the electrophysiology lab violated his rights under both the ADA and the FMLA.

## II. STANDARD OF REVIEW

3

We review the granting of a motion for summary judgment de novo, applying the same criteria used by the district court in the first instance. Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 40 (5th Cir. 1996). In reviewing the evidence contained in the record, we view the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. Id. Summary judgment is appropriate only where there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine dispute of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," but a fact is material only if its determination "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1985).

## III.  DISCUSSION

Heffern contends that the district court erred in granting defendant Willis-Knighton's motion for summary judgment. He focuses on two main points of error under the ADA, the first relating to his claim that he is protected by the ADA as a qualified individual with a disability, and the second relating to his claim that direct patient contact was not an "essential function" of the job of cardiac coordinator and that "reasonable accommodation" by Willis-Knighton would have made his reinstatement as cardiac coordinator feasible. As to both these

4

claims, Heffern insists that fact questions exist, precluding summary judgment. Heffern further argues that fact questions exist regarding his claim that Willis-Knighton violated his rights under the FMLA by failing to return him to his previous position or to an equivalent one upon his return from medical leave. We address each of these issues in turn.

## A. ADA Claim

Heffern's first argument relates to the district court's conclusion that Heffern was not protected by the ADA and was therefore ineligible to bring a claim under that statute. We need not address that argument because even if Heffern were to qualify as a disabled individual under the ADA, he would nevertheless be required to prove a prima facie case of discrimination in order to survive a motion for summary judgment. Because the record would permit only one conclusion -- Heffern was not qualified for the position of cardiology coordinator at the time of his reinstatement -- Heffern has failed to prove a prima facie case of discrimination.

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1995). The burden is on the plaintiff in

5

an ADA discrimination case to show that "(1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees."  Daigle v. Liberty Life Insurance Co., 70 F.3d 394, 396 (5th Cir. 1995).

Due to his agreement with the Recovering Nurse Program, Heffern was prohibited from working in any position that was highly stressful or unsupervised.  Moreover, Barbara McGill specifically recommended that he not return to the electrophysiology lab unless he was excused from patient care.  Thus, in order to determine if Heffern was qualified for the position of cardiology coordinator of the electrophysiology lab, the district court was called upon to determine whether patient care is an essential function of that position.  If patient care is an essential function of the job, the district court was then required to determine whether reasonable accommodation by Willis-Knighton would have made it possible for Heffern to perform it.

According to the EEOC regulations promulgated to implement the ADA, the essential functions of a job are those that are the "fundamental job duties of the employment position."  29 C.F.R. § 1630.2(n)(1) (1997).  Along with other factors, the regulations indicate that "[w]ritten job descriptions" prepared prior to advertising or interviewing applicants and "the employer's judgment as to which functions are essential" may be considered.

6

29 C.F.R. § 1630.2(n)(3). Heffern's 1994 pre-printed evaluation form contained the following statements as part of the job description: "Supervises or assists in all departmental procedures," . . . "[a]ssures that patients receive maximum care services in accordance with established methods and techniques under the supervision of the Cardiologists." In addition, the evaluation form noted that "[t]he above statements reflect the general duties considered necessary to describe the principal functions of the job as identified, and shall not be considered as a detailed description of all the work requirements that may be inherent in the position." Based on this job description, the district court found that providing patient care was an essential function of the job of cardiac coordinator of the electrophysiology lab.

Heffern argues that this description is insufficient to support summary judgment, but there is in fact additional evidence in the record to support the district court's decision. Kathy Rowland, Administrative Director of the Cardiology Departments, testified that the job is "highly demanding" and "required substantial patient contact." In addition, Dr. Scott Wiggins, a physician who worked in the electrophysiology lab, testified that the cardiac coordinator provides direct patient care and that the job was stressful. Finally, although Heffern's affidavit contains a line to the effect that the cardiac coordinator position did not require "substantial patient

7

contact," Heffern goes on to state that, "I did have substantial patient contact while I held it since I was a qualified and unrestricted registered nurse." Nevertheless, Heffern argues that although the department is generally staffed with four people -- two registered nurses, a physician, and an x-ray technician -- there was no requirement that either nurse be the cardiac coordinator. Although it may be true that the positions of nurse and cardiac coordinator <u>can</u> be severed, the EEOC regulations promulgated to implement the ADA specify that a "function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. §1630.2(n)(2)(ii) (1997). In this case, in order to relieve the cardiac coordinator position of direct patient care responsibilities, Willis-Knighton would have had to hire a fifth person to work in the electrophysiology lab.

In sum, the summary judgment evidence (including evidence drawn from Heffern's own experience) indicates that patient care was an essential function of the job of cardiac coordinator. Although Heffern disputes this conclusion, he presents no evidence other than a bare conclusion, undermined by his own experience, in his own affidavit to support his contention, and he therefore has failed to create a genuine issue of material fact that precludes summary judgment on this claim.

8

Having determined that patient care is an essential function of the job of cardiac coordinator, the next question that we must address is whether Willis-Knighton could have reasonably accommodated Heffern's disability by redefining the position to exclude patient care.

Often, reasonable accommodation refers to the modification of the job description or of the work environment in such a way as to allow the disabled individual to perform the essential function at issue.  29 C.F.R. § 1630.2(o) (1997).  In this case, however, the Program Agreement that Heffern signed prohibited him from working without supervision and from providing patient care in a critical care unit.  Thus, the only possible way to accommodate Heffern's disability was to eliminate patient care from the responsibilities of the cardiac coordinator.  This court has previously held that requiring an employer to use another employee to substitute for the portions of the job that the disabled individual cannot perform "exceeds reasonable accommodation."  Bradley v. University of Texas M.D. Anderson Cancer Center, 3 F.3d 922, 925 (5th Cir. 1993), cert. denied, 510 U.S. 1119 (1994); see also EEOC v. Amego, Inc., 110 F.3d 135 (1st Cir. 1997) (holding, in similar employment dispute, that hiring additional staff to compensate for plaintiff's disability went beyond reasonable accommodation).

The EEOC guidelines indicate that reasonable accommodation also may include "reassignment to a vacant position."  29 C.F.R.

§ 1630.2(o)(2)(ii) (1997).  In this case, Heffern was in fact reassigned to another position for which he was qualified.  We therefore agree with the district court's finding that on this record, there was no reasonable accommodation which would have allowed Heffern to resume his position as cardiac coordinator, and that Willis-Knighton did in fact reasonably accommodate Heffern to the extent possible by reassigning him to a position for which he was qualified.

### B.  FMLA

Heffern claims that a similar fact question exists relating to his claim that Willis-Knighton also violated his rights under the FMLA by failing to either return him to his previous position or reassign him to an equivalent one.  We disagree.

The FMLA provides that an eligible employee who takes medical or family leave is entitled to "be restored by the employer to the position of employment held by the employee when the leave commenced" or to be "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1) (Supp. 1997).  Because the FMLA is a relatively new statute, few courts have had the opportunity to interpret it.  Nevertheless, those that have considered the statute have applied the burden-shifting framework that was introduced in McDonnell Douglas Corp. v. Green, 411 U.S.

10

792 (1973).  <u>See</u>, <u>e.g.</u>, <u>Kaylor v. Fannin Regional Hospital, Inc.</u>, 946 F. Supp. 988, 1000 (N.D. Ga. 1996) ("The burden shifting approach best effectuates the intent of the FMLA to prohibit discrimination against employees using FMLA leave because it can most accurately balance providing employees a broader basis for proving an employer violated the FMLA while also protecting the interests of employers."); <u>see also</u> <u>Morgan v. Hilti, Inc.</u>, 108 F.3d 1319, 1323 n.3 (10th Cir. 1997) (applying <u>McDonnell Douglas</u> analysis to FMLA claim); <u>Oswalt v. Sara Lee Corp</u>, 889 F. Supp. 253, 259 (N.D. Miss. 1995) (same), <u>aff'd</u> 74 F.3d 91 (5th Cir. 1996).

Under the <u>McDonnell Douglas</u> framework, the plaintiff must establish a prima facie case of discrimination.  In other words, the plaintiff "must produce evidence that he or she is protected under the FMLA, that he or she suffered an adverse employment decision, and . . . that the adverse decision was made because of the plaintiff's request for leave." <u>Oswalt</u>, 889 F. Supp. at 259. Once the plaintiff establishes a prima facie case, then the burden shifts to the defendant, who must provide a legitimate and non-discriminatory reason for the action.  <u>Id.</u>  Once the defendant has introduced an appropriate reason, then the burden again shifts to the plaintiff to provide evidence that the reason given by the defendant was merely a pretext.  <u>Id.</u>

In the present case, Heffern has presented no evidence that the adverse decision was made on the basis of his taking FMLA

11

leave. Moreover, even if Heffern had proved a prima facie case, Willis-Knighton has provided a legitimate reason for the transfer--the Program Agreement's restrictions on his working conditions. In addition, Willis-Knighton has provided a legitimate reason, in the form of an existing company policy not to transfer those with corrective action notices in the last six months, for refusing to transfer Heffern back to the electrophysiology department upon his request. Heffern has introduced no evidence tending to show that these reasons were pretextual or illegitimate. Thus, as the district court correctly determined, Willis-Knighton did not violate the FMLA by reassigning Heffern to the Renal Dialysis Unit upon his return or by later refusing to transfer him.


## IV. CONCLUSION

For the foregoing reasons, we find that the district court properly granted summary judgment in favor of Willis-Knighton. The judgment is AFFIRMED.

12