**Shirley ANDRESS, Plaintiff,**

v.

**NATIONAL PIZZA COMPANY INTERNATIONAL, INC., Defendant.**

**Civ.A. No. 5:94CV59BR N.**

United States District Court, S.D. Mississippi, Western Division.

Sept. 25, 1997.

---

John Hunter Stevens, Grenfell, Sledge & Stevens, Jackson, MS, for Plaintiff.

Herbert C. Ehrhardt, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, Frederick J. Lewis, Kelly S. Gooch, McKnight, Hudson, Lewis & Henderson, Memphis, TN, for Defendant.

## MEMORANDUM OPINION

BRAMLETTE, District Judge.

This cause is before the Court on the defendant National Pizza Company International, Inc. (NPC)'s motion for summary judgment (**docket entry no. 58**). After careful consideration of the motion, response, memoranda of authorities and all supplementing documents, as well as the applicable law, the Court finds as follows:

This is a civil action brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("the ADA" or "the Act"). The plaintiff Shirley Andress contends that NPC violated the ADA by terminating her employment and by failing to provide accommodation with regard to her alleged disability resulting from an on-the-job injury. Moving for summary judgment, NPC denies that the plaintiff is "disabled" under the meaning of the ADA, denies that the plaintiff is a "qualified individual" under the Act, denies that the plaintiff's employment was terminated, denies that the plaintiff ever presented herself for work following her injury, denies that the plaintiff sought reasonable accommodation, denies that reasonable accommodation could be made, and denies that the plaintiff was discriminated

against. The defendant also raises the issue of estoppel based on allegations made by the plaintiff in her claims for disability benefits and workers' compensation benefits.

Although the underlying facts are not complicated, the parties have divergent views of their significance and relevance to this lawsuit. The uncontested facts, given below, are derived from the plaintiff's Statement of Uncontested Facts,[1] and from NPC's Statement of Uncontested Facts to the extent that the plaintiff's response agrees with or fails to negate same.

Shirley Andress began working for NPC as a waitress in October of 1985. In February of 1990, she became manager of NPC's Pizza Hut restaurant number 1810 in Vicksburg, Mississippi. On or about January 29, 1991, the plaintiff was injured on the job when a colander fell off a shelf and hit her right shoulder. She continued to work until May of 1991, when she took a leave of absence for an unrelated medical procedure.

In June of 1991, the plaintiff entered the hospital for her scheduled medical procedure. Also in June, she began receiving medical treatment for her shoulder. While still on leave of absence, in September of 1991, the plaintiff saw Dr. Felix H. Savoie, an orthopedic doctor, for the first time. Dr. Savoie performed a surgery to debride and repair a slight tear in the plaintiff's right rotator cuff.

Following the operation, the plaintiff continued to complain of pain.

In January of 1992, the plaintiff applied for disability insurance through her NPC group plan. The plaintiff has received disability benefits from January of 1992 to the present.[2]

In June of 1992, Dr. Savoie performed a diagnostic arthroscopy to determine the cause of the plaintiff's continued complaints of pain. The arthroscopy showed an essentially normal shoulder with no structural abnormalities, and Dr. Savoie was unable to find any anatomical reason for the plaintiff's claims of pain.

In September of 1992, the acting manager of the Vicksburg Pizza Hut informed the area manager that she would be moving and could no longer manage the restaurant. NPC then filled the plaintiff's former job by promoting an assistant manager from Ruston, Louisiana, to manager of the Vicksburg restaurant.[3]

In November of 1992, Dr. Savoie released the plaintiff to work with restrictions of no lifting greater than 25 pounds and no lifting of more than 10 pounds overhead.[4]

In March of 1993, the plaintiff received a letter from the defendant advising that her employment was terminated.[5]

---

1. Although the plaintiff is not required to file a Statement of Uncontested Facts when she has not filed a motion for summary judgment, the Court accepts the document as part of the plaintiff's response to the defendant's Statement of Uncontested Facts.

2. NPC contends that in connection with her application for disability benefits, the plaintiff has certified throughout the relevant time period that she is completely unable to perform the material functions of her occupation. Also according to NPC, in May of 1992, the plaintiff completed an application for long-term disability insurance which stated "my job is being held open for me but because of the injury to my shoulder I can't perform a lot of my duties." NPC asserts that in February of 1995 the plaintiff told a representative of Fortis Benefits that she still did not believe that she was physically able to return to work. The plaintiff objects to the defendant's characterization of her representations, and contends that any representations made by her were "solely the result of the discriminatory actions of the defendant in refusing to allow her to return to her occupation."

3. The plaintiff's job had been held open by NPC for seventeen months. The plaintiff denies that the job had been held open for her benefit, and alleges that she was not considered for the position when the new manager was hired.

4. The defendant contends that it has informed the plaintiff from the beginning of her leave of absence that she will be returned to work upon a written medical release from her doctor. NPC alleges that neither the plaintiff nor Dr. Savoie has ever provided it with a physician's release. The plaintiff objects to this characterization by the defendant, and states that a release was included in medical files furnished the defendant or the defendant's agents (presumably in connection with the plaintiff's disability or workers' compensation claims).

5. The defendant admits that a COBRA letter was sent to the plaintiff in March of 1993, indicating the termination of her employment, but explains that the letter was sent in error and was subsequently corrected. The defendant contends that the plaintiff was notified of the mistake and cor-

In April of 1993 the plaintiff filed a petition to controvert with the Mississippi Workers' Compensation Commission. She had been released by her physician, Dr. Savoie, as having reached maximum medical recovery on November 16, 1992, with a 16% permanent impairment of the right upper extremity and a 10% impairment to the body as a whole.[6]

In May of 1993 the plaintiff filed a charge of discrimination with the EEOC alleging that the defendant had violated the ADA by terminating her employment and by failing to provide accommodation with regard to her alleged disability.

In March of 1994, the defendant offered the plaintiff a position as assistant manager.[7]

In May of 1994, the plaintiff was awarded temporary total disability benefits by the Mississippi Workers' Compensation Commission, which found that the plaintiff had sustained a 60% industrial disability to her right upper extremity.

In April of 1994, the plaintiff received a determination from the EEOC finding no cause to believe that NPC had violated the ADA, and a notice of right to sue.

In June of 1994 the plaintiff filed the action now before this Court alleging that NPC's refusal to allow her to return to her job as restaurant manager constitutes a violation of the ADA.

In June of 1994, Dr. Savoie performed a superior capsular plication in an attempt to alleviate the plaintiff's continuing complaints of pain. In May of 1995, the plaintiff was involved in an automobile accident which she claims re-injured her shoulder.[8]

The plaintiff takes the position that she was terminated in March of 1993, when she received the COBRA letter. She maintains that her termination, coupled with NPC's refusal to accommodate her physical restrictions to the job of restaurant manager, constitutes a violation of the ADA. She also seems to take the position that even if she was not terminated, NPC's refusal to make reasonable accommodation violates the ADA. She also alleges that NPC refuses to accept her for employment without a physician's full release without restrictions. She contends that NPC's offer of an alternative position is irrelevant to her claim under the ADA.

The defendant maintains that although its general policy is to terminate an employee who has been on a leave of absence for more than seventeen months, the plaintiff has not been terminated to date and is still on leave of absence. The defendant also admits that the plaintiff's employment record was excellent prior to her leave of absence, and asserts that the plaintiff is welcome to return to work. The defendant denies that the ADA is applicable to the plaintiff, and contends that even if it is, the plaintiff is not entitled to

---

rection, and that the plaintiff has admitted that she was notified. The plaintiff's employment records indicate the correction was made on July 12, 1993.

6. Although it admits that a medical report was furnished the workers' compensation commission by Dr. Savoie, the defendant denies that the plaintiff or her physician ever presented NPC with a release for the plaintiff to return to work, denies that the plaintiff was in fact released to return to work in November of 1992, and denies that the plaintiff sought to return to work. The defendant also contends that the plaintiff, in her petition to controvert, certified that she had a 100% permanent disability and 100% loss of wage earning capacity. The plaintiff objects to this characterization of the facts, and denies that she made such representations to the workers' compensation commission.

7. The plaintiff admits that two days before her workers' compensation hearing, she was offered

a job by the defendant at lower wages than she had received as manager, but alleges that the offer was not made in good faith. The defendant contends that it was made in good faith, and that the plaintiff never tested the defendant's good faith by reporting to work.

8. The defendant alleges, and the plaintiff admits, that Dr. Savoie stated to employees of Genex, a physical therapy group employed by the defendant's insurance carrier, that the plaintiff was unable to perform the specific job of NPC restaurant manager as described in the defendant's written job description. However, the plaintiff alleges that she "is able to perform the essential functions of the job of a Pizza Hut manager with reasonable accommodation which was refused by the defendant." According to the defendant, Dr. Savoie stated before the accident that he expected to release the plaintiff to return to work with no restrictions in June of 1995. To date, however, he has not released the plaintiff free of restrictions.

relief because there has been no violation of the Act. NPC asserts that the only way to accommodate the plaintiff's existing physical restrictions to the restaurant manager position is to have an additional employee in the store at all times, to perform those functions that the plaintiff's restrictions prevent her from performing, and that therefore accommodation is not reasonable.[9] The defendant asserts that an alternative position is available, with or without accommodation, which the plaintiff could perform with her present restrictions, and that if she is released by her physician without restrictions, she would be considered for the restaurant manager position.

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." Fed.R.Civ. Pro. 56(c). In determining whether there are any genuine issues of material fact, this Court must first turn to the applicable law to discern what factual issues are, indeed, material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Fields v. City of South Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Then, the Court must examine the evidence of the type listed in Rule 56(c) to detect the existence or non-existence of a material issue. *Id.*, at 1187. Further," ... summary judgment will not lie if the dispute about material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, supra*, at 248, 106 S.Ct. at 2510. The Fifth Circuit has added:

> Both the Supreme Court and this circuit have addressed, at length, how much evidence the nonmoving party must present. The Supreme Court explained that the standard for granting summary judgment mirrors the standard for a directed verdict ... "[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment ..." ... Nor is the "mere existence of a scintilla of evidence" sufficient.... This circuit has described the amount of evidence the non-moving party must bring forward as "significant probative evidence." This may be equated with the "substantial evidence" ... standard used to determine whether a directed verdict is appropriate.

[Citations omitted.]

*State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990).

The moving party bears the initial burden of establishing the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir.1990). Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is inappropriate. *Id.*, at 178; *Fields, supra*, at 1187. The nonmoving party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Fields, supra*, at 1187. If the opponent fails in his duty, summary judgment is implicated. *Id.*, at 1187. The United States Supreme Court has also stated that summary judgment is mandated where sufficient time for discovery has elapsed and a party has failed to establish an essential element of his case upon which he would have born the burden of proof at trial. *Celotex, supra*, at 322, 106 S.Ct. at 2552; *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988).

This Court's first obligation is to look to the applicable law to determine which facts are material and which are immaterial. The ADA has often been characterized as full of ambiguities, and, in any event, it is the sub-

---

9. NPC alleges that at the time of her injury the plaintiff's duties included unloading trucks, stocking and counting inventory, making pizza, mopping and cleaning, operating the cash regis-

ter, among other tasks. The plaintiff denies that these duties fit her job description at the time of her accident.

ject of frequent debate. While not every aspect of the Act has been settled in this circuit, there are enough recent cases from this and other circuits to provide an outline of the plaintiff's burden of proof in establishing a prima facie case.

■ The ADA was enacted to discourage discrimination against disabled persons in the work place, *Milton v. Bob Maddox Chrysler Plymouth, Inc.*, 868 F.Supp. 320, 324 (S.D.Ga.1994); *Hutchinson v. United Parcel Service, Inc.*, 883 F.Supp. 379, 387–90 (N.D.Iowa 1995). The ADA prohibits employers from discriminating against a "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112. A "qualified individual with a disability" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the position that the individual holds or desires. *Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092, 1101 (S.D.Ga.1995).

■ Establishing that one is disabled is the cornerstone to an ADA plaintiff's prima facie case. "Disability" means that the individual

(A) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [or]

(B) a record of such impairment; [or]

(C) [is] being regarded by his employer as having such impairment.

42 U.S.C. § 12102(2); *Milton v. Scrivner*, 53 F.3d 1118, 1123 (10th Cir.1995). The "disability" criteria have been explored in *Wooten v. Farmland Foods*, 58 F.3d 382, 385–86 (8th Cir.1995); *Haysman*, 893 F.Supp. at 1100–01; *Rhodes v. Bob Florence Contractor, Inc.*, 890 F.Supp. 960, 962–63 (D.Kan.1995); and *Ricks v. Xerox Corp.*, 877 F.Supp. 1468, 1474–76 (D.Kan.1995). Disability determinations often turn on whether the impairment substantially limits a "major life activity" (*e.g.*, "an individual whose legs are paralyzed," 29 C.F.R. Pt. 1630, App. § 1630.2(j) at 402 (1995)), in which case an impairment may be shown.

In contrast, if the individual is not "substantially limited with respect to . . . a major life activity, the individual's ability to perform the major life activity of working should be considered." 29 C.F.R. Pt. 1630, App. § 1630.2(j) at 403 (1995). However, a substantial limitation in a major life activity typically obviates the need to inquire as to work activity. For example, "if an individual is blind, *i.e.*, substantially limited in the major activity of seeing, there is no need to determine whether the individual is also substantially limited in the major activity of working." 29 C.F.R. Pt. 1630, App. § 1630.2(j) at 403 (1995). But where the ADA plaintiff tries to show a substantial limitation in the major life activity of working, three additional factors may be considered, including the geographical area to which the individual has reasonable access and a "similar jobs" comparison analysis as set forth in 29 C.F.R. § 1630(j)(3)(ii) (1995). *Rhodes*, 890 F.Supp. at 963.

■ In all cases, an impairment, real or perceived, must be substantially limiting, which means "significant." *Wooten*, 58 F.3d at 385. A significant impairment is one that is viewed as foreclosing generally the type of employment involved, not just a narrow range of job tasks. *See Hutchinson*, 883 F.Supp. at 390–91. In fact, the term "substantially limits" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3) (1995). The C.F.R. ADA Appendix provides further elaboration:

For example, an individual who cannot be a commercial airline pilot because of a minor vision impairment, but who can be a commercial airline co-pilot or a pilot for a courier service, would not be substantially limited in the major life activity of working. Nor would a professional baseball pitcher who develops a bad elbow and can no longer throw a baseball be considered substantially limited in the major life activity of working.

29 C.F.R. Pt. 1630, App. § 1630.2(j) at 403 (1995).

In both the pilot and pitcher examples, "the individuals are not substantially limited in the ability to perform any other major life activity and, with regard to the major life activity of working, are only unable to perform either a particular specialized job or a narrow range of jobs." *Id.*

■ In addition to the initial showing of "disability," the ADA plaintiff's prima facie case must also establish the plaintiff as "a qualified individual with a disability." 42 U.S.C. § 12111(8). An ADA claimant is "qualified" if, with or without the employer's reasonable accommodation, he can perform the "essential functions" of the job. The "essential functions" are the "fundamental job duties of the position in question." *Haysman*, 893 F.Supp. at 1101.

Some ADA claimants argue whether the essential function claimed by the employer truly is "essential," as opposed to dispensable, or even pretextual (*i.e.*, employed more to discriminate than to advance a legitimate job requirement, see 42 U.S.C. § 12112(b)(6)). In response to a plaintiff's showing in that regard, the employer can point to evidence of whether a particular function is essential, which includes, but is not limited to: (1) the employer's judgment as to what is essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the amount of time spent on the job performing the function, (4) the consequences of not requiring the individual to perform the function, (5) the terms of a collective bargaining agreement, (6) the work experience of past incumbents in the job, and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3)(i-vii); *Haysman*, 893 F.Supp. at 1101. In this regard, "consideration shall be given to the employer's judgment as to what functions of a job are essential. . . ." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3)(i) (1995); 29 C.F.R. Pt. 1630 App. § 1630.2(n) at 405–06 (1995); *Johnston v. Morrison, Inc.*, 849 F.Supp. 777, 778 (N.D.Ala.1994).

■ At the next stage in her ADA prima facie case, the ADA plaintiff must show that she is qualifiedly disabled, which means that she can, with or without reasonable accommodation, perform the essential function of the job in question. She can argue that the function is not essential, in which case she can then proceed to establish the remainder of her prima facie case showing unlawful termination because of her disability. But if the ADA plaintiff fails to overcome the employer's showing that the job function in question is essential, then she must show that she can perform the essential job function with or without reasonable accommodation made for her disability.

■ Where the ADA plaintiff intends to show that she can perform the essential job function with reasonable accommodation, the initial evidentiary burden of production is placed upon her. The plaintiff must show that her employer can make a reasonable accommodation to enable the plaintiff's employment notwithstanding her disability. *Ricks*, 877 F.Supp. at 1476. Once the plaintiff meets her burden of proving that reasonable accommodation is possible, the burden then shifts to the employer to prove inability to accommodate. *Milton v. Scrivner. Inc.*, 53 F.3d 1118, 1124 (10th Cir.1995); *Morton v. GTE North Incorporated*, 922 F.Supp. 1169, 1178 (N.D.Tx.1996).

■ The next step in the statutory scheme requires an allocation: whose burden is it to show what constitutes a reasonable accommodation? The terms "reasonable accommodation" and "undue hardship" often go hand-in-hand. Although the terms are separately defined (*see* § 12111(9)–(10)), the ADA provides that employers are liable for failing to make reasonable accommodations to qualified individuals unless the employer demonstrates that the accommodation imposes undue hardship. § 12112(b)(5)(A). Furthermore, employers with a "business necessity" have a defense when they impose "qualification standards, tests, or selection criteria that . . . tend to screen out" individuals with disabilities. § 12113(a). "Ultimately, the employer bears the burden of proof for both 'undue burden' and 'business necessity' because both are affirmative defenses under the language of the statute." *Riel v. Electronic Data Systems Corporation*, 99 F.3d 678, 682 (5th Cir.1996).

Section 12112(b)(5)(A) states that "unless [the employer] can demonstrate" an undue burden, it may not discriminate. Similarly, § 12113(a) (titled "Defenses") begins with the phrase "[i]t may be a defense." In contrast, discrimination is defined to be a "failure to implement reasonable accommodations," suggesting that the plaintiff bears the burden of proof on that issue.

The Fifth Circuit has therefore held that the burdens of proof are allocated "where they comfortably fit," *i.e.,* "within the statutory scheme and the practical administration of pre-trial and trial proceedings." *Id.* The employee must show that the employer failed to implement a reasonable accommodation, and the employer may defend by showing business necessity or undue burden. *Id.*

■■■■■ This Court is of the opinion that, since the ADA plaintiff is in the best position to know her own limitations, the initial burden to show what constitutes a reasonable accommodation is upon her. Further, that burden is two-fold. The plaintiff bears the burden of proving either that she can meet the requirements of the job without special assistance, or that an accommodation exists that permits her to perform the job's essential functions, and she must do it in a timely fashion.

■■■■ As to the proffer requirement, the plaintiff bears only a burden of production. It is not a heavy one, but the plaintiff must show the existence of a plausible accommodation, the costs of which do not clearly exceed its benefits. The timeliness requirement, in contrast, remains with the plaintiff to the point of persuasion by a preponderance of the evidence.

■■■■ Once the plaintiff meets her initial burden of production on the first element of the reasonable accommodation showing, the risk of nonpersuasion shifts to the employer to present evidence of its inability to accommodate. The timing factor likewise applies here. In other words, after-the-fact rationalizations in summary-judgment briefs, or so-called "after-acquired evidence," would not appear to have any application in this context. *See Schmidt v. Safeway, Inc.,* 864 F.Supp. 991, 994–995 (D.Or.1994); *but cf.,*

*Wallace v. Dunn Const. Co., Inc.,* 62 F.3d 374, 378–79 (11th Cir.1995) (*en banc*) (after-acquired evidence rule announced in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), applies to Title VII and Equal Pay Act cases).

■■■■ Rather, the employer must show either that (1) the plaintiff failed to timely call the employer's attention to the need to make an accommodation, and such need was not otherwise reasonably apparent; or (2) the employer tried to accommodate or meaningfully explored the option but in good faith concluded it was unable, absent undue hardship, to accommodate. *See* 42 U.S.C. § 12111(10) (defining "undue hardship"). As to the second element, the employer in effect must perform a "cost-benefit analysis," which is a more refined analysis than that used by the employee in meeting her initial burden of production. Where the employer makes this showing, the employee, upon whom the burden of persuasion ultimately remains, must then rebut the employer's showing. *See Ricks,* 877 F.Supp. at 1476.

■■■■ Of course, resolving the "undue hardship" or "inability to accommodate" element can be problematic. "Reasonable" is a relational term. "An accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce." *Borkowski v. Valley Central School District,* 63 F.3d 131, 139 (2d Cir.1995). Under 42 U.S.C. § 12111(9)(B), reasonable accommodation "may include ... job restructuring ... [which can include] reassignment to a vacant position...."; *Pedigo v. P.A.M. Transport, Inc.,* 891 F.Supp. 482, 486–87 (W.D.Ark.1994), *vacated and remanded on other grounds,* 60 F.3d 1300, 1303–04 (8th Cir.1995); *Haysman,* 893 F.Supp. at 1102–04. Not making reasonable accommodations for the known physical or mental limitations of an otherwise qualified, disabled employee (*e.g.,* making changes to work rules, facilities, and working conditions, where such changes do not unduly burden the employer), can constitute discrimination. *Rhodes,* 890 F.Supp. at 963.

**486**

On the other hand, "the law is clear that reallocation of job duties constitutes a change in the essential functions of [the employee's] job and [therefore] is not required under the ADA." *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F.Supp. 446, 449 (W.D.Okl.1994); *Scrivner, Inc.*, 53 F.3d at 1123–24 (altered or reduced production standards or designation of lighter workload was not a "reasonable accommodation" for employees who were unable, due to their alleged disabilities, to meet employer's new production standards; employer was not required to reallocate job duties, altering essential function of job, where such accommodation would have required other workers to work harder or longer hours, etc.); *Eckles v. Consolidated Rail Corp.*, 890 F.Supp. 1391, 1399 (S.D.Ind.1995) ("Nor is an employer required to accommodate a disabled employee in exactly the way he or she requests"); *Champ v. Baltimore County*, 884 F.Supp. 991, 999 (D.Md.1995) ("An accommodation is unreasonable if it requires elimination of an essential duty"); *Larkins v. CIBA Vision Corp.*, 858 F.Supp. 1572, 1583 (N.D.Ga.1994).

Nor, for that matter, does the ADA require "affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled." *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995). That is because the ADA "prohibits discrimination against qualified individuals, no more and no less." *Id.*; *Wooten*, 58 F.3d at 386 ("An employer is not required to make accommodations that would violate the rights of other employees"); *Eckles*, 890 F.Supp. at 1407–13 (other employees do not have to be "bumped," nor does a bona fide seniority system have to be disrupted, in order to accommodate an ADA plaintiff); *Haysman*, 893 F.Supp. at 1105; *Ricks*, 877 F.Supp. at 1477 (company was not required to promote employee, nor provide him with a "helper" under reasonable accommodation standard); 29 C.F.R. Pt. 1630, App. § 1630.2(*o*) at 407 (1995) (an employer would not have to provide a blind security guard with an assistant to read identification cards, where security guard position required that ability; the assistant would be performing the job rather than assisting the disabled individual to perform the job).

To summarize, an ADA plaintiff who has properly exhausted her EEOC remedies must prove all of the following: (1) that she has a disability known to the employer; (2) that she is, with or without reasonable accommodation, qualified to perform the essential functions of her job; and (3) an inference can be drawn that she was discriminated against (*e.q.*, terminated) because of her disability. *Tyndall v. National Educ. Centers*, 31 F.3d 209, 212–13 (4th Cir.1994); *Otis*, 884 F.Supp. at 448–49.

If the plaintiff succeeds in making her prima facie case, the burden then shifts to the employer to rebut the initial showing. If, however, the plaintiff cannot succeed in making a prima facie case, summary judgment is warranted. A defendant need not thread through the entire burden-shifting framework outlined above in order to prevail in an ADA case. In many cases the disabled plaintiff, with or without her employer's reasonable accommodation, simply cannot perform the essential function of the position she holds or desires. In that case she cannot show that she was "qualified" under the ADA. An employer can shorten the litigation by assuming arguendo the existence of a disability and then showing that the employee simply cannot perform the job even with a reasonable accommodation, or that no reasonable accommodation can be made.

Turning to the instant case, the Court finds that the plaintiff has failed to demonstrate that she has a disability within the meaning of the ADA. An impairment, standing alone, does not necessarily constitute a disability as defined by the ADA. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995). Rather, the statute requires "an impairment that substantially limits one or more of the major life activities." *Id.*

Regulations enacted by the Department of Health and Human Services define a "physical or mental impairment" as follows:

(1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory (including speech organs); cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or

(2), Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

*See id. (citing* 29 C.F.R. § 1630.2(h)(1), (2)); *see also School Board of Nassau Co. v. Arline,* 480 U.S. 273, 280, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987). The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993); *see* 29 C.F.R. § 1630.2(j)(1) (1993). "Substantially limits" is defined as follows:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

*See* 29 C.F.R. § 1630.2(j)(1) (1993). The regulations instruct that the following factors "should be considered" when determining whether an individual is substantially limited in a major life activity:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

*See* 29 C.F.R. § 1630.2(j)(2); *Bolton,* 36 F.3d at 943 (internal quotation omitted). "A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA. The statute requires an impairment that substantially limits one or more of the

major life activities." *Dutcher,* 53 F.3d at 726.

First, the Court determines whether Andress' impairment substantially limits a major life activity other than working. *Id.* at 726 n. 10; 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630, App., § 1630(j). "To determine whether a person is substantially limited in a major life activity other than working, [the court looks] to whether that person can perform the normal activities of daily living." *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996) (*citing Dutcher,* 53 F.3d at 726). The plaintiff has not presented any evidence that she was unable to take care of the normal activities of daily living. Because the plaintiff does not suffer from a substantial limitation on a major non-work activity, the Court must consider whether she is substantially limited in her ability to perform the major life activity of working. With regard to the activity of working, the regulations provide the following guidance:

> [S]ubstantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). "An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one." *Dutcher,* 53 F.3d at 727 (*quoting Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 n. 3 (6th Cir.1985)).

The plaintiff has presented no evidence that she is substantially limited in the life activity of work. She has not shown that she is significantly restricted in either a class of jobs or a broad range of jobs in various classes. The fact that an employee is unable to meet the specific demands of a specific job does not mean that she is substantially limited from performing a class of jobs or a broad range of jobs in various classes.

Assuming, however, that the plaintiff is disabled for purposes of the ADA, the

Court now examines whether the plaintiff is a "qualified individual with a disability." The ADA defines a "qualified individual with a disability" as "an individual who, with or without accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Hence, the Court considers whether Andress could "perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue," and, if not, whether "any reasonable accommodation by the employer would enable [her] to perform those functions." *Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir.1993).

When Andress took her leave of absence in May of 1991, she was unavailable for work. She apparently obtained a release from her doctor some eighteen (18) months later. There is some dispute over whether the plaintiff notified her employer of this release. Nevertheless, the plaintiff has offered no evidence that she attempted to return to work or discuss reasonable accommodation with her employer. At the same time, the plaintiff sought relief from the State Worker's Compensation Commission, and disability insurance benefits through her employer's plan. In connection with these claims, she made representations that she was totally disabled and/or was unable to perform the material duties of her job.

 Because Andress could not, or would not, attend work, she is not a "qualified individual with a disability" under the ADA. As several courts have recognized, "[a]n essential element of any . . . job is an ability to appear for work . . . and to complete assigned tasks within a reasonable period of time." *Carr v. Reno,* 23 F.3d 525, 530 (D.C.Cir.1994); *see also Tyndall v. Nat'l Educ. Centers, Inc. of Cal.,* 31 F.3d 209, 213 (4th Cir.1994) (an employee "who does not come to work cannot perform any of his job functions, essential or otherwise.").

In addition, even if the plaintiff had presented herself for work, she could not perform some of the essential functions of her job. Her former job as Pizza Hut restaurant manager required performing not only management-type duties, but also any other jobs in the restaurant on an as-needed basis, including moving stock, taking inventory, lifting items in excess of 25 pounds, lifting the same items overhead, operating a dough making machine, kneading dough, making pizza, putting pizzas into and removing pizzas from the oven, cutting pizzas, operating the cash register, mopping, and other cleanup tasks. (Fred Windham Aff.; Essie Cooper Depo., pp. 27–29). The plaintiff acknowledged in her deposition that she performed all such duties as needed during the course of her employment. (Plaintiff's Depo., p. 63; *see also* Kelly Harrison Depo., pp. 34–35; William Andress Depo., pp. 25–26). Other store managers have testified that the ability to perform all duties in the store on short notice is required in order to satisfactorily manage the store. (Cooper Depo., pp. 27–29, 53–54). The plaintiff and her physician both stated that she was unable to perform some of the essential functions of her job. (MWW Pet. to Controvert; Mutual Benefit Life Addendum to Claim Statement; Plaintiff's Depo., pp. 67–68, Dr. Felix Savoie Depo. p. 28; Harrison Depo. pp. 34–35, 39–40, 42–43).

 Disregarding the plaintiff's failure to report for work for the moment, the Court turns to the issue of whether any reasonable accommodation by the defendant would have enabled the plaintiff to perform her job. The only accommodation suggested by the plaintiff is elimination of some of the essential functions of her former position. (Plaintiff's Depo., pp. 63, 67, 68). NPC has, however, demonstrated to the Court that such an accommodation is not reasonable. An employer is not required to eliminate an essential job function or to transfer essential functions to another employee to comply with the ADA since such restructuring exceeds reasonable accommodation. *Bradley v. Texas M.D. Anderson Cancer Center,* 3 F.3d 922, 924–25 (5th Cir.1993). The ADA does not require a defendant to restructure a job to delete essential functions or to hire an extra person to perform the functions a plaintiff is unable to do, in order to avoid discriminating or as a method of reasonable accommodation.

 Furthermore, an employer is not required to reassign an employee to another

position or to alter or reduce the disabled individual's duties, causing his workload to be lighter than that of similarly situated employees. *Otis v. Canadian Valley–Reeves Meat Co.*, 884 F.Supp. 446 (W.D.Okla.1994), *aff'd* 52 F.3d 338 (10th Cir.1995). Reinstating Andress in her former position would place a heavier burden on her co-employees. An accommodation that would result in other employees having to work harder or longer is not required under the ADA. *Turco v. Hoechst Celanese Chemical Group*, 101 F.3d 1090, 1094 (5th Cir.1996).

Also in this regard, the Court notes that the defendant did offer the plaintiff the job of assistant manager which would accommodate her physical limitations. The plaintiff alleges that the job offers were not made in good faith, but this is mere conjecture. The plaintiff never tested the good faith of the offers, nor did she attempt to further discuss accommodation with the defendant. The Court also notes that although the plaintiff alleges she was terminated, the COBRA letter sent by her employer was admitted to be an error, and NPC promptly corrected the error and notified her. In fact, the defendant has kept the plaintiff in its employ for more than four years, despite its policy of terminating employees who are on leave of absence for more than seventeen months.

An employer is not required to keep a plaintiff's job open and/or maintain the plaintiff on medical leave, paid or otherwise, indefinitely. As the Fourth Circuit has explained,

> Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.... [R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected ...

*Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

Finally, the defendant argues that statements the plaintiff made on Workers' Compensation and disability insurance claim forms representing that she is, for all work-related purposes, completely disabled, prevent her from arguing that she was, in fact, able to return to work. Federal courts have held that disabled individuals who certify in a claim for disability benefits that they are totally disabled from work are estopped from claiming that they can perform the essential functions of their job. In *August v. Offices Unlimited, Inc.*, 981 F.2d 576 (1st Cir.1992), the First Circuit reviewed an entry of summary judgment in favor of the employer on the plaintiff's disability discrimination claim under Massachusetts law, which defined a "qualified handicapped person" in language nearly identical to the ADA. The plaintiff in *August* suffered from major depression and had been on an extended disability leave when he received notice of his termination. The Court found that the plaintiff's claim was properly dismissed because he:

> was simply incapable of performing the essential functions of any job, let alone a furniture sales position at [defendant employer]. This fact was established by [his] own sworn statements on numerous disability insurance claim forms, in which he asserted that he was totally and continuously disabled from March 24, 1989, onward. Written statements signed by his psychiatrist ... verified his total disability.

*Id.* at 581. The Court held that "no reasonable fact finder could conclude that, at relevant times, [the plaintiff] was a qualified handicapped person within the meaning of [the Massachusetts Disability Act]," and bound plaintiff to his admissions. *Id.* at 582.

Likewise, in *Reigel v. Kaiser Found. Health Plan*, 859 F.Supp. 963 (E.D.N.C. 1994), the Court rejected the plaintiff's assertion that she could perform the essential functions of her, job with reasonable accommodation, in light of the many disability insurance claim forms and letters signed by plaintiff certifying her permanent disability and inability to work. *Id.* at 969. On that evidence, the Court granted summary judgment in favor of the employer on the plain-

·tiff's ADA claim. *Id.* at 977. The Court reasoned:

> Plaintiff in the case *sub judice* cannot speak out of both sides of her mouth with equal vigor and credibility before this court. Plaintiff now seeks money damages from [her employer] on her assertion that she was physically willing and able to work during the same period that she was regularly collecting disability payments on her assertion that she was physically unable to work.

*Id.* at 970. *See also Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 770–71 (8th Cir.1987) (in affirming the dismissal of plaintiff's Rehabilitation Act claim, the court considered significant the fact that plaintiff certified to her insurance carrier that she was unable to work because of her ailments and would be unable to work in the foreseeable future).

Like the plaintiffs in the above cases, Andress has similarly represented in claim forms that she is permanently disabled. Her statements, when considered in their full context and in light of the purposes for which they were originally made—to secure disability benefits for the plaintiff—establish to the Court's satisfaction that plaintiff perceived her injury to be a total and full-time disability as it related to her job at NPC. The plaintiff, by filling out these documents, certified that she was providing accurate and true information that she believed constituted a proper basis for her receipt of disability benefits. The Court finds that there is no ambiguity in the statements made by plaintiff in these documents and accepts these statements at their face value.

The Court acknowledges that the plaintiff now contends that she did not feel she was fully disabled. However, the Court finds that the plaintiff is guilty of doing what the plaintiffs in the cases discussed above did—*i.e.*, speaking out of both sides of the mouth. The Court emphasizes that this is not the sole reason, but constitutes further support, for the Court's finding that Andress has failed to demonstrate that she was qualified to perform the essential functions of her job with NPC.

This Court does not hold that a finding of disability by the Workers' Compensation Commission or a disability insurance plan necessarily forecloses an ADA claim. Instead, it is the substance of Andress' testimony and representations, and her failure to demonstrate that she was willing to return to some form of work, which create the hurdle for the plaintiff. The two positions are clearly inconsistent, and regardless of the label attached to this phenomenon, their advancement is not legally proper. Other courts considering identical or similar fact situations have almost universally agreed with this result. *See Smith v. Midland Brake, Inc.*, 911 F.Supp. 1351, 1358 (D.Kan.1995) (even if finding of disability by Social Security Administration "took into consideration age and other factors, this does not change the fact that the plaintiff unqualifiedly stated that he was unable to work. The case law is clear that it is the plaintiff's inconsistent representations which have preclusive effect"); *Harden v. Delta Air Lines. Inc.*, 900 F.Supp. 493, 497 (S.D.Ga.1995) (court found it "'incredible' that a[n][ADA] plaintiff would claim that he was discriminated against by his employer for failing to make reasonable accommodations while representing to various entities that he was unable to work"; it concluded there was "no reasonable accommodation that can be given to allow a totally disabled person, as plaintiff claims he was, to perform the essential functions of any job"); *Cheatwood v. Roanoke Industries*, 891 F.Supp. 1528, 1538 (N.D.Ala.1995) (plaintiff testified at workers' compensation trial that he could not even perform basic household tasks; court found plaintiff could not make out a prima facie case under ADA as he was "bound by his prior testimony that he could not perform the essential functions of his prior job"); *Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 555 (D.Kan.1995) (ADA plaintiff consistently represented her inability to perform material job duties in applying for and receiving long-term disability insurance and social security disability benefits; court found that "based on these unambiguous and seemingly informed representations, plaintiff is estopped from now claiming that she could perform the essential functions of her position").

Andress' failure to show that she could perform the essential functions of her job, coupled with her failure to show how NPC could have restructured her job in such a way as to enable her to accomplish its essential functions, and her failure to attempt to return to work and/or discuss accommodation, means that she has failed to discharge her summary judgment duties. Alternatively, the Court has found that she has not shown she is "disabled" within the meaning of the ADA. Thus, it is unnecessary to discuss the remaining elements of an ADA claim. *See White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995). Accordingly,

IT IS HEREBY ORDERED that the defendant National Pizza Company International, Inc.'s motion for summary judgment **(docket entry no. 58)** is GRANTED, as previously ordered by the Court. A final judgment shall follow.