**Tommy MINK Plaintiff**

v.

**WAL–MART STORES, INC. Defendant.**

**No. 1:00CV422–M–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

Jan. 24, 2002.

T.K. Moffett, Moffett Law Firm, PLLC, Amory, MS, for Tommy Mink, plaintiff.

Lorrie K. Ridder, Rossie, Luckett, Parker & Ridder, Memphis, TN, for Wal–Mart Stores, Inc., defendant.

## *MEMORANDUM OPINION*

MILLS, District Judge.

This cause comes before the Court on the defendant's motion for summary judgment. The Court, after due consideration, hereby grants the defendant's motion for summary judgment finding that plaintiff is not a "qualified individual with a disability" under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et. seq. and therefore has no standing to bring suit.

### *FACTS*

The plaintiff, Tommy Mink ("Mink"), began employment with the defendant, Wal–Mart Stores Inc.("Wal–Mart"), in 1989 as a long-haul 18–wheeler truck driver. On November 6, 1998, Mink requested a medical leave of absence from his employment to undergo back surgery for non-work related injuries. After surgery, he developed nerve entrapment in his left leg. This condition also required surgery. After the second surgery Mink experienced a left foot drop, a condition which causes the leg not to lift properly. This resulted in physician mandated work restrictions including no prolonged standing, no heavy lifting over fifty pounds, and necessitated the wearing of a foot brace to work. According to his treating physician, Mink could only drive a truck for zero to two minutes per day, the lowest category rating, and could not use his left foot for repetitive movements such as operating a foot control. In December, 1999, Mink contacted Wal–Mart about returning to work with these restrictions. Wal–Mart refused to allow Mink to return to work unless he obtained a full release without restrictions from his treating physician. Wal–Mart required a full medical release to satisfy it's legal obligation to comply with National Department of Transportation ("DOT") safety regulations. These regulations bar operation of commercial vehicles by drivers suffering from a foot or leg impairment when such impairment interferes with the ability to perform the normal tasks associated with vehicle operation.

After failing to pass or even take a DOT physical, Mink was officially terminated by Wal–Mart on March 14, 2000 for failure to return to work within one year after his

leave of absence and for medical disabilities. Although Mink maintains that he could have passed a DOT physical with his foot brace in place, he never actually took a physical during his one year leave of absence. More than one year after his termination from Wal–Mart, Mink stopped wearing his foot brace and passed a DOT physical in May 2001. Mink has now filed suit against Wal–Mart alleging unlawful discrimination under the Americans with Disabilities Act of 1990 ("ADA"). Wal–Mart brings this motion for summary judgment, arguing that Mink does not meet ADA requirements to maintain a cause of action for disability discrimination. Wal–Mart also argues that Mink was terminated for failure to meet legitimate qualification standards, a non-discriminatory reason for termination.

## LAW

### I. SUMMARY JUDGMENT

Summary judgment is proper if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

Mink's argument states that there are many facts, including the reason for termination and the necessity of accommodations, which are disputed and therefore must be decided by a jury. Before any facts may be decided by a jury, the first analysis is whether the plaintiff has standing to bring the suit as a matter of law. In order to successfully bring an ADA discrimination suit, plaintiff must first show that he was a "qualified individual with a disability" at the time of his termination. This Court concludes that as a matter of law, plaintiff does not pass this test and therefore no genuine issues of material fact exist.

### II. PRIMA FACIE CASE FOR DISABILITY DISCRIMINATION

In order to successfully litigate an ADA claim, the claimant must establish a prima facie case of disability discrimination which requires proof that (1) he was disabled within the meaning of the Act; (2) he was qualified for the position, with or without an accommodation; (3) he suffered an adverse employment decision because of his disability; and (4) he was replaced by a non-disabled person. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Andress v. National Pizza Co. Intern., Inc.*, 984 F.Supp. 475, 486 (S.D.Miss.1997). "If the plaintiff succeeds in making the prima facie case, the burden then shifts to the employer to rebut the initial showing. If, however, the plaintiff cannot succeed in making a prima facie case, summary judgment is warranted." *Andress* at 486. The ADA requires covered entities, such as Wal–Mart, to provide "reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A) (1994 ed.); *see also* § 12111(2). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with

or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8).

## A. ADA DEFINITION OF "DISABILITY"

■ Plaintiff bases his ADA claim on the premise that he is or was disabled at the time of his termination. To qualify under the ADA's definition of disability a claimant must prove that he or she has a physical or mental impairment. *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 688, 151 L.Ed.2d 615 (2002) (citing 42 U.S.C. § 12102(2)(A)). In addition, the claimant must also prove that the impairment substantially limits a major life activity. *Id.* The Supreme Court follows the Equal Employment Opportunity Commissions' definition of "substantially limited" as meaning that the claimant is "unable to perform a major life activity that the average person in the general population can perform." *Id.* at 690, (citing 29 CFR § 1630.2(j) (2001)). The word "substantial" precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities. *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 565, 119 S.Ct. 2162, 2168, 144 L.Ed.2d 518 (1999).

■ "Major life activities" refer to those activities that are of central importance to daily life. *Toyota* at 690–91. Thus, major life activities include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 480, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (citing CFR § 1630.2(i)). "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires ... that plaintiffs allege that they are unable to work in a broad class of jobs, rather than a specific job." *Id.* at 491, 119 S.Ct. 2139. "When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job." *Toyota* at 692–93.

■ In the present case, Mink must prove that at the time of termination he was disabled according to the elements and statutory requirements set forth above. First, at the time of his termination, Mink experienced problems with his leg lifting properly. While this condition does indeed meet the definition of an impairment, it does not *substantially* limit a major life activity as required by statute. According to the treating physician's report, Mink can perform major life activities such as walking or performing manual tasks, with only a minor variation or interference. In considering whether the major life activity of working is substantially limited by Minks' condition, this Court must also examine his alternative opportunities for employment. Mink asserts that his condition limited his ability to drive a truck, but he does not allege an inability to work in a broad class of employment. Although Mink may not have been able to perform the tasks associated with his job as a truck driver, it is certainly clear that he was not prohibited from finding employment in another occupation which would not require him to operate a commercial vehicle.

The facts before this Court do not offer even a scintilla of evidence that Mink is unable to perform the variety of tasks central to most people's daily lives. Consequently, this Court concludes that at the time of his termination Mink's leg impairment did not rise to the type of disability

which the ADA was intended to protect, and therefore he lacks standing under the ADA to bring this claim.

## B. ADA DEFINITION OF "QUALIFIED"

 While Mink's failure to prove disabled status is dispositive, the Court will also address the second prong of the prima facie case which is his qualification for employment. To meet this standard, claimant must show that he can perform all of the essential functions of his job in spite of his handicap. *Albertson's,* at 570, 119 S.Ct. 2171. These essential job functions are often measured by using a qualification standard or a minimum requirement of skills necessary to carry out the activities associated with each job. *Id.* In *Albertson's,* a case similar to this one, the Supreme Court held that DOT mandated regulations must be used as qualification standards by any company wishing to employ commercial motor vehicle drivers. *Id.* The Court reasoned that "[t]hese standards have been adopted to insure that 'drivers of modern ... complex vehicles' must be able to 'withstand the ... physical and mental demands that their occupation now imposes.'" *Id.* (citing 35 Fed.Reg. 6458 (1970)). Mink does not challenge the validity of these regulations.

Mink's employment as a truck driver was contingent on maintenance of his Department of Transportation certification. These regulations, which Wal–Mart is bound to obey, prohibit persons from operating a commercial motor vehicle who have an impairment to the arm, foot or leg which interferes with the ability to perform the normal tasks associated with operating a commercial motor vehicle. *see generally* 49 CFR § 391.41(b)(2)(ii). Mink clearly suffered a foot impairment which interfered with his ability to operate an 18–wheeler at the time of his termination.

Further, Mink's treating physician would not release him to drive a truck for more than zero to two minutes per day and opined that he would not be able to use his foot to operate a foot control. Because Mink was not qualified to operate a commercial motor vehicle under DOT regulations at the time of his termination, his inability to perform the essential functions of his job was an uncontestable reason for Wal–Mart to terminate his employment.

Public policy considerations are also at play in this analysis. The ADA regulations are in place to protect the rights of disabled individuals to obtain meaningful employment. In this instance, these individual rights are in conflict with National DOT regulations which are implemented for purposes of public safety. The public safety concerns at issue in this case are a legitimate defense to Mink's claim of ADA violations.

## III. CONCLUSION

For the foregoing reasons this Court finds that plaintiff fails to present a prima facie case of disability discrimination as he was neither disabled under the ADA definition, nor was he qualified for his position at the time of his termination. Defendants' motion for summary judgment is granted. An order will issue accordingly.